Joshua D. Buck, Nev. Bar No. 12187
josh@thiermanbuck.com
Leah L. Jones, Nev. Bar No. 13161
leah@thiermanbuck.com
THIERMAN BUCK
325 W. Liberty Street
Reno, Nevada 89501
Tel. (775) 284-1500
Fax. (775) 703-5027

*Attorneys for Plaintiff
and the putative classes*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| TAYLOR STUBBINS, on behalf of herself and all other similarly situated individuals,<br><br>Plaintiff,<br><br>vs.<br><br>SPRING VALLEY HOSPITAL MEDICAL CENTER; VALLEY HEALTH SYSTEMS, INC.; UNIVERSAL HEALTH SERVICES, INC., and DOES 1 through 50, inclusive,<br><br>Defendant(s). | Case No.: 2:24-cv-01672-EJY<br><br>**PLAINTIFF'S MOTION FOR CIRCULATION OF NOTICE PURSUANT TO 29 U.S.C § 216(b)** |

Pursuant to 29 U.S.C § 216(b) of the Fair Labor Standard Act ("FLSA"), Plaintiff TAYLOR STUBBINS ("Plaintiff" or "Stubbins"), through her attorneys, hereby moves the Court of an Order directing that other persons similarly situated to Plaintiff be given notice of the pendency of this action and an opportunity to file written consents with the Court to join this action as party plaintiffs, and for other associated relief including a toll of the statute of limitations.

This Motion is based on the Memorandum of Points and Authorities in support thereof, the proposed Notice of Pendency of FLSA Collective Action Lawsuit against Defendants SPRING VALLEY HOSPITAL MEDICAL CENTER, VALLEY HEALTH SYSTEMS, INC.,

and UNIVERSAL HEALTH SERVICES, INC., (collectively "Defendants") (attached to this motion as Exhibit A), the Proposed Consent to Join (attached to this Motion as Exhibit B), all accompanying exhibits, pleadings, papers and records on file herein, all matters the Court deems just and necessary.

For all the reasons expressed herein, Plaintiff respectfully requests this Court grant this Motion for Circulation of Notice of the Pendency of the federal FLSA collective action.

DATED: September 26, 2024                THIERMAN BUCK

                                         */s/Leah L. Jones*
                                         Joshua D. Buck
                                         Leah L. Jones

                                         *Attorneys for Plaintiff*
                                         *and the putative classes*

**THIERMAN BUCK**
325 W. Liberty Street
Reno, NV 89501
(775) 284-1500 / Fax (775) 703-5027
Email info@thiermanbuck.com / www.thiermanbuck.com

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Certification under the FLSA occurs in two stages: "First, at or around the pleading stage, plaintiffs will typically move for preliminary certification." *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1109 (9th Cir. 2018); *Curley v. Customer Connexx LLC*, 2019 WL 13254503, at *2 (D. Nev., 2019) (*citing Campbell*); *see also Nelson v. Wal-Mart Associates, Inc.,* 2022 WL 3636488, at *2 (D. Nev., 2022) ("[e]arlier in the litigation, around the pleading stage . . . plaintiffs tend to move for 'preliminary certification' of the collective action by arguing they have at least facially satisfied the 'similarly situated' requirement." (*citing Campbell*)). "'The sole consequence' of a successful motion for preliminary certification is 'the sending of court-approved written notice' to workers who may wish to join the litigation as individuals." *Campbell*, 903 F.3d at 1101 (*quoting Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013)). Second, "at or after the close of relevant discovery[,] . . . [t]he employer can move for 'decertification' of the collective action for failure to satisfy the 'similarly situated' requirement in light of the evidence produced to that point." *Id.* at 1109.

A court may approve preliminary certification upon a plaintiff showing that all putative collective members are "similarly situated." 29 U.S.C. § 216(b). "The level of consideration [at the preliminary stage] is 'lenient,'—sometimes articulated as requiring 'substantial allegations,' sometimes as turning on a 'reasonable basis,' but in any event loosely akin to a plausibility standard, commensurate with the stage of the proceedings." *Campbell*, 903 F.3d at 1109 (internal citations omitted). To be "similarly situated," "party plaintiffs must be alike with regard to some material aspect of their litigation . . . [such that the similarity] 'allows . . . plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources.'" *Id.* at 1114 (second omission in original) (emphasis omitted) (*quoting Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989)). That is, "Party plaintiffs are similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims." *Campbell*, 903 F.3d at 1117. Furthermore, where "the party plaintiffs' factual or legal

THIERMAN BUCK
325 W. Liberty Street
Reno, NV 89501
(775) 284-1500 / Fax (775) 703-5027
Email info@thiermanbuck.com / www.thiermanbuck.com

similarities are material to the resolution of their case, dissimilarities in other respects should not defeat collective treatment." *Id.* at 1114. (emphasis omitted).

Plaintiff Stubbins and the current Opt-In Plaintiffs, Matthew Steele and Ara Pinpin (collectively "Plaintiffs"), seek certification of the following classes of potential opt-in plaintiffs:

> **FLSA Rounding Class:** All nonexempt hourly paid persons employed by Defendants who were subject to Defendants' Quarter Hour Rounding Policy during the relevant time period alleged herein.
>
> **FLSA Mobile Electronic Device Class:** All nonexempt hourly paid persons employed by Defendants who were provided with a mobile electronic device during their workday at any time during the relevant time period alleged herein.

The proposed classes are comprised of potential opt-in plaintiffs who were subject to the same employment policies and practices as Plaintiffs.

First, with respect to the **FLSA Rounding Class**, Plaintiffs allege that Defendants maintained a timekeeping policy whereby non-exempt hourly paid employees would clock in and out via the KRONOS timekeeping system. The clock in/out times are used to calculate the hours worked for payment of wages. Defendant's rounding policy ("Quarter Hour Rounding Policy") states, "Our payroll system automatically rounds to the nearest quarter hour. Clocking in or out more than seven minutes prior to or after your scheduled start or end shift will result in your time rounding to the closest quarter hour. For example, if your shift starts at 8 am: (a) 7:52 will round back to 7:45, 7:53 will round forward to 8:00, (b) 8:07 will round back to 8:00, 8:08 will round forward to 8:15." (*See* ECF No. 1-1 Exhibit A "Timekeeping Acknowledgment".) Plaintiffs allege that Defendants' Quarter Hour Rounding Policy operated to deprive employees of pay for time actually worked.

Second, with respect to the **FLSA Mobile Electronic Device Class,** Defendants maintained a policy whereby Plaintiffs and all potential opt-in plaintiffs were required to carry on their person and continuously monitor an employer-provided mobile electronic device (hereinafter referred to as the "Cerner Mobile Device") during the workday and though out the entirety of their shift, including during meal periods. Plaintiffs allege that Defendants' Mobile

**THIERMAN BUCK**
325 W. Liberty Street
Reno, NV 89501
(775) 284-1500 / Fax (775) 703-5027
Email info@thiermanbuck.com / www.thiermanbuck.com

Electronic Device Policy prevented them from taking bona fide meal periods because they were never completely relieved from duty for the purpose of eating regular meals.

This Motion for Circulation of Notice of Pursuant to 29 U.S.C. § 216(b) is brought so that other employees of Defendants who have been the victims of Defendants alleged unlawful pay policies and practices have an opportunity to preserve their statute of limitations and participate in this action.

## II.     PROCEDURAL HISTORY

Plaintiff Stubbins filed this action in the United States District Court, District of Nevada, on September 10, 2024, asserting the following five (5) causes of action: (1) Failure to Pay Overtime in Violation of 29 U.S.C. § 207; (2) Failure to Pay Minimum Wages in Violation of the Nevada Constitution and NRS 608.250; (3) Failure to Compensate for All Hours Worked in Violation of NRS 608.140 and 608.016; (4) Failure to Pay Overtime in Violation of NRS 608.140 and 608.018; and (5) Failure to Timely Pay All Wages Due and Owing in Violation of NRS 608.140 and 608.020-.050. (ECF No. 1.)

Defendant Valley Health System was served with the summons and complaint on September 12, 2024 (ECF No. 7) and Defendants Spring Vallet Hospital Medical Center and Universal Health Services, Inc were served with the summons and complaint on September 13, 2024 (ECF Nos. 8, 9, respectively). Defendants have not yet responded to the complaint as of the date of this filing.

## III.    COMMON FACTS

### A.     The Parties

1.     Defendants operate a network of six (6) acute care hospitals, seven (7) freestanding emergency departments, and numerous primary care and specialty facilities located in Las Vegas and Southern Nevada. (ECF No. 1 at ¶¶ 9-11.)

2.     Plaintiff Stubbins was employed by Defendants as a Registered Nurse ("RN") in the Intermediate Care Unit ("IMC"). (ECF No. 1 at ¶ 8; *see also* Declaration of Taylor Stubbins, (hereinafter "Stubbins Dec.") at ¶ 3.) Plaintiff Stubbins was employed by Defendants from on or

THIERMAN BUCK
325 W. Liberty Street
Reno, NV 89501
(775) 284-1500 / Fax (775) 703-5027
Email info@thiermanbuck.com / www.thiermanbuck.com

about June 22, 2020 to January 16, 2024, as an hourly-paid, non-exempt, non-union employee who earned $43.00 per hour at the time of her termination. (ECF No. 1, ¶ 17; Stubbins Dec. at ¶ 2.)

3. Plaintiff Stubbins' regular schedule was three (3) shifts a week, for 12.5 hours each shift, from 7:00 p.m. to 7:30 a.m. (ECF No. 1 at ¶ 18; Stubbins Dec. at ¶ 4.) She was also required to be available for extra shifts and work overtime when needed. (*Id.*) Plaintiff Stubbins recalls working more than forty (40) hours in a week on several occasions when she worked shifts greater than 12.5 hours as required due to staffing issues and/or workload. (*Id.*)

4. Opt-in Plaintiff Matthew Steele has been employed by Defendants as an hourly paid, non-exempt, non-union RN since May 2022 and is presently a Relief Charge Nurse at Spring Valley Hospital who is paid $40.56 per hour. *See* Declaration of Matthew Steele (hereinafter "Steele Dec.") at ¶ 3.

5. Opt-in Plaintiff Steele is regularly scheduled for and works the day shift three days per week, 12.5 hours per day. He has also worked over 40 hours in a workweek on occasion. (*Id.*, ¶ 6.)

**B.    Defendants' Quarter Hour Rounding Policy**

6. Plaintiffs and all potential opt-in plaintiffs use the same timekeeping system called KRONOS for clocking in and out. (ECF No 1 at ¶ 19; *see also* Stubbins Dec. at ¶ 5; Steele Dec. at ¶ 4.)

7. Plaintiff Stubbins was provided with Defendants' Quarter Hour Rounding Policy. (ECF No. 1, Exhibit A.)

8. Plaintiff Steele was also aware of the Quarter Hour Rounding Policy stating that his punch time was rounded to the nearest 15-minute increment. (Steele Dec. at ¶ 5.)

9. Plaintiffs routinely worked prior to the beginning of their regularly scheduled shift and after the end of their regularly scheduled shift but due to Defendants' Quarter Hour Rounding Policy, Plaintiffs believe that this time spent working for Defendants was rounded off their time for pay purposes. (ECF No. 1 at ¶ 22; Stubbins Dec. at ¶ 8; Steele Dec. at ¶¶ 5, 6.).

THIERMAN BUCK
325 W. Liberty Street
Reno, NV 89501
(775) 284-1500 / Fax (775) 703-5027
Email info@thiermanbuck.com / www.thiermanbuck.com

10. In addition, when Plaintiffs worked more than forty (40) hours in a workweek, Defendants' Quarter Hour Rounding Policy operated to deprive Plaintiff of overtime premium pay for the workweek. A review of Plaintiff Stubbins' pay and clock records indicates for the week beginning April 14, 2021, Plaintiff was paid for 40 hours of work but worked 40.41 hours of work from April 14 to April 17, 2021. *Id.* Specifically, due to Defendants' rounding policy .41 hours of time were rounded off Plaintiff's time for pay purposes. *Ibid.* Plaintiff Stubbins then worked 36.60 hours from April 21, 2021 to April 23, 2021. *Ibid.* Thus, for this two-week pay period Plaintiff Stubbins was paid for 76 hours of work at her straight time rate, when she should have been paid her overtime rate of pay for the .41 hours of overtime for the first week of the pay period. *See* Exhibit C, "Spring Valley Stubbins Summary and Detail."

### C. Defendants' Employer-Provided Cerner Mobile Electronic Device Policy

11. Plaintiff, Opt-in Plaintiffs and all those similarly situated were required to carry on their person and continuously monitor an employer-provided a Cerner Mobile Device during the workday and though out the entirety of their shift, including during meal periods. (ECF No. 1 at ¶¶ 35-36, 44-45; Stubbins Dec. at ¶ 9; Steele Dec. at ¶ 7.)

12. When Plaintiff Stubbins was working at Spring Valley, she would collect her Cerner Mobile Device at the start of her scheduled shift by signing out a Cerner Mobile Device on the sign-in/out sheet that was used to track which employee had which device in their possession. (ECF No. 1 at ¶ 37; Stubbins Dec. at ¶ 10.) Plaintiff Stubbins would then use her unique Cerner log-in credentials to sign in to the Cerner Mobile Device (*Id.*; Stubbins Dec. at ¶ 11.) At the end of her shift, Plaintiff Stubbins would use her unique Cerner credentials to sign out of the Cerner Mobile Device, then use the sign-in/out sheet to sign back in the Cerner Mobile Device for use by another employee (*Ibid.*)

13. Prior to Plaintiff Stubbins separation of employment, the process changed whereby employees would hand off their Cerner Mobile Device to an oncoming colleague at the beginning of their scheduled shift. (ECF No. 1 at ¶ 38; Stubbins Dec. at ¶ 12.) This hand-off took place when the outgoing nurse would provide the incoming nurse with bedside shift report of

THIERMAN BUCK
325 W. Liberty Street
Reno, NV 89501
(775) 284-1500 / Fax (775) 703-5027
Email info@thiermanbuck.com / www.thiermanbuck.com

information about patients and other work-related issues at the end of the outgoing nurse's shift and prior to the beginning of the oncoming nurse's regularly scheduled shift start time (*Ibid*.) This process was the same for Opt-in Plaintiffs Pinpin and Steele. (Steele Dec. at ¶ 11.)

14.     Once the outgoing nurse signed out of the Cerner Mobile Device, Plaintiffs would then use their unique Cerner log-in credentials to sign in to the Cerner phone. (*Ibid.*) Employees were strictly prohibited from sharing sign-in credentials. (*Ibid.*) If the outgoing nurse did not have a colleague to pass the Cerner Mobile Device to, the outgoing nurse would still log out of the Cerner Mobile Device and give it back to the Charge Nurse. (*Ibid.*). In some instances, the Charge Nurse would send mass text messages on the Cerner Mobile Device to employees, instructing them to whom they should pass the device. (ECF No. 1 at ¶ 39; Steele Dec. at ¶ 13.)

15.     The employer-provided Cerner Mobile Device was used to communicate with co-workers, particularly physicians, nurses, and other medical staff, regarding patients under their care throughout their entire shift, including during meal periods.  (ECF No. 1 at ¶ 42; Stubbins Dec. at ¶ 14; Steele Dec. at ¶ 8. Plaintiffs were always monitoring their Cerner Mobile Devises for alerts, notifications, patient emergencies, and physician calls, among other things, throughout their shifts.  (ECF No. 1 at ¶ 43; Stubbins Dec. at ¶ 15; Steele Dec. at ¶ 15.)

16.     Defendants required all its employees to clock out for their meal periods during their workday. (ECF No. 1 at ¶ 44; Stubbins Dec. at ¶ 15.) There was no policy or procedure in place for Plaintiffs to hand off or turn off their Cerner Mobile Device during the entry of their regularly scheduled shifts. (*Id.*; Stubbins Dec. at ¶ 13; Steele Dec. at ¶ 14.) Because Plaintiffs were required to keep their Cerner Mobile Device on them at all times to monitor calls, including their meal periods, Plaintiff and all other similarly situated employees were never completely relieved of duty. (ECF No. 1 at ¶ 44; Stubbins Dec. at ¶ 15; Steele Dec. at ¶¶ 7, 8, 15 .)

## IV.     LEGAL ARGUMENT

### A.     Preliminary Conditional Certification Standard

Under the FLSA, employers must pay their employees a minimum wage and overtime wages for hours worked in excess of forty (40) hours per week. *See* 29 U.S.C. § 207. If an employer fails to do so, an aggrieved employee may bring a collective action on behalf of

"similarly situated" employees based on their employer's alleged violations of the FLSA. *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1064 (9th Cir. 2000).

The decision as to whether to certify a collective action is within the discretion of the district court. *Adams v. Inter–Con Sec. Sys.*, 242 F.R.D. 530, 535 (N.D. Cal. 2007) (*citing Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 466 (N.D. Cal. 2004). Certification under the FLSA occurs in two stages. This Motion concerns the first stage—preliminary certification. *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1109 (9th Cir. 2018) ("First, at or around the pleading stage, plaintiffs will typically move for preliminary certification.").

"'Preliminary certification' of an FLSA collective action—also known as 'provisional' or 'conditional' certification—[has] . . . '[t]he sole consequence' of . . . 'sending . . . court-approved written notice' to workers who may wish to join the litigation as individuals." *Id.* at 1101 (*quoting Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013)). A court may approve preliminary certification upon a plaintiff showing that all putative collective members are "similarly situated." 29 U.S.C. § 216(b). "The level of consideration [at the preliminary stage] is 'lenient,'— sometimes articulated as requiring 'substantial allegations,' sometimes as turning on a 'reasonable basis,' but in any event loosely akin to a plausibility standard, commensurate with the stage of the proceedings." *Campbell*, 903 F.3d at 1109 (internal citations omitted). To be "similarly situated," "party plaintiffs must be alike with regard to some material aspect of their litigation . . . [such that the similarity] 'allows . . . plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources.'" *Id.* at 1114 (second omission in original) (emphasis omitted) (*quoting Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989)). That is, "Party plaintiffs are similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims." *Campbell*, 903 F.3d at 1117. Furthermore, where "the party plaintiffs' factual or legal similarities are material to the resolution of their case, dissimilarities in other respects should not defeat collective treatment." *Id.* (emphasis omitted).

The reason for such a lenient standard during the notice stage is simple—the court is merely deciding whether the potential class should be notified of the pending action. *Leuthold*,

2274 F.R.D. 462 at 467. Indeed, this is a procedural motion to determine whether Notice should be sent out to absent class members so that they can decide whether to participate in this action. Only after the parties have had a full opportunity to exhaust the discovery process will the legal and factual issues be put before this Court of whether Plaintiff and the Proposed Class should be paid for alleged work they performed off-the-clock. Therefore, opt-in plaintiffs who share common issues of law and fact must be given an opportunity to participate in the action and be bound by the result. *Id* at 468 ("Bypassing the notice stage altogether would deprive the court of this information and might deprive some plaintiffs of a meaningful opportunity to participate.").

Here, the pleading stage is still being determined. Plaintiff has only recently filed her complaint. After Plaintiff is provided with a list of potential opt-ins and notices are sent out, the Parties will be able to more fully explore the factual and employment situation of any opt-ins that will be appropriate for the more searching "similarly situated" requirement under the second-tier analysis. *Leuthold*, 2274 F.R.D. 462 at 468 (recognizing that when relevant facts have not been fully explored, the court should defer to the first-tier analysis and that "[t]he number and type of plaintiffs who choose to opt into the class may affect the court's second tier inquiry regarding the disparate factual and employment situations of the opt-in plaintiffs, as well as fairness and procedural issues."). Indeed, as adeptly noted by the *Leuthold* court, "[b]ypassing the notice stage altogether would deprive the court of this information and might deprive some plaintiffs of a meaningful opportunity to participate." *Id.*

Because Defendants' Quarter Hour Rounding Policy and Mobile Electronic Device Policy applied to Plaintiffs and all potential class members, equally, this case is ripe for conditional certification and notice should be sent out to all putative class members so they can decide for themselves whether to join this lawsuit.

**B.   Plaintiff Stubbins, Opt-In Plaintiffs Pinpin and Steele, and Potential Opt-In Plaintiffs Share Issues of Fact**

As set forth in the common facts section above, Plaintiff Stubbins and Opt-in Plaintiffs Pinpin and Steele share similar issues of fact with the potential opt-in plaintiffs who must be provided with information about the pendency of this action. First, Plaintiff Stubbins, Opt-in

THIERMAN BUCK
325 W. Liberty Street
Reno, NV 89501
(775) 284-1500 / Fax (775) 703-5027
Email info@thiermanbuck.com / www.thiermanbuck.com

Plaintiffs Pinpin and Steele, and potential opt-in plaintiffs are all non-exempt hourly paid patient care employees who were/are employed by Defendants.[1] Second, Plaintiff Stubbins and Opt-in Plaintiffs Pinpin and Steele and potential opt-in plaintiffs are/were required to use/used the KRONOS timekeeping system to record their clock in/out times.[2] Third, Plaintiff Stubbins and Opt-in Plaintiffs Pinpin and Steele and potential opt-in plaintiffs are subject to Defendants' Quarter Hour Rounding Policy.[3] Fourth, Plaintiff Stubbins and Opt-in Plaintiffs Pinpin and Steele and potential opt-in plaintiffs are/were required to carry on their person and continuously monitor the employer-provided Cerner Mobile Device throughout their workday including during meal periods.[4] Fifth, Plaintiff Stubbins and Opt-in Plaintiffs Pinpin and Steele and potential opt-in plaintiffs would receive messages/notifications on their Cerner Mobile Device regarding patients under their care throughout their entire shift, including during meal periods.[5] Sixth, Defendants required Plaintiff Stubbins and Opt-in Plaintiffs Pinpin and Steele and potential opt-in plaintiffs to clock out for their meal periods during their workday, but because they were required to keep their employer-provided Cerner Mobile Device on their person and monitor it for calls during their meal periods, Plaintiffs were never completely relieved of duty.[6] All of these common facts support notice being issued to potential opt-in plaintiffs for the FLSA Off-the-Clock Classes.

### C. Plaintiff Stubbins, Opt-In Plaintiffs Pinpin, and Steele, and Potential Opt-In Plaintiffs Share Issues of Law

This case presents a common question of law under the FLSA identical for Plaintiffs and all potential opt-in plaintiffs:

> 1) Whether Plaintiffs and all other FLSA Rounding Class Members were disadvantaged and deprived wages for the hours

---

[1] *See* ECF No. 1 at ¶¶ 8, 17; *see also* Stubbins Dec. at ¶ 3; Steele Dec. at ¶ 2.

[2] *See* ECF No. 1 at ¶ 19; *see also* Stubbins Dec. at ¶ 5; Steele Dec. at ¶ 4.

[3] *See* ECF No. 1 at ¶ 20; *see also* Stubbins Dec. at ¶ 7; Steele Dec. at ¶¶ 5-6.

[4] *See* ECF No. 1 at ¶¶ 35-36; *see also* Stubbins Dec. at ¶¶ 14-15; Steele Dec. at ¶ 7.

[5] *See* ECF No. 1 at ¶¶ 42-43; *see also* Stubbins Dec. at ¶ 6; Steele Dec. at ¶ 8.

[6] *See* ECF No. 1 at ¶¶ 44-45; *see also* Stubbins Dec. at ¶ 6; Steele Dec. at ¶¶ 14-15.

THIERMAN BUCK
325 W. Liberty Street
Reno, NV 89501
(775) 284-1500 / Fax (775) 703-5027
Email info@thiermanbuck.com / www.thiermanbuck.com

worked as a result of Defendants' Quarter Hour Rounding Policy; and

2) Whether Plaintiffs and FLSA Mobile Electronic Device Class members were provided with a bona fide lunch period as a result of Defendants' Mobile Electronic Device Policy.

The common questions of law presented above are common to Plaintiffs and all potential opt-in plaintiffs, alike. Pursuant to the FLSA, an employer must compensate an employee for all work that it suffers and/or permits. *See, e.g.*, *Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 285 (2d Cir. 2008) (The relevant standard is whether an employer "suffered or permitted" an employee to perform work). Once an employee demonstrates that the employer's timekeeping system is not accurate, then the employee carries her burden "if [s]he proves that he has in fact performed work for which he was improperly compensated and if [s]he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946) *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1047 (2016) (Instead of punishing "the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work," the Court held "an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.") (citing *Mt. Clemens*, 328 U.S., at 687, 66 S.Ct. 1187). While rounding of time is not per se illegal under the FLSA, an employer violates the overtime pay requirements if the employer's policy averages out over a period of time that results in a failure to compensate the employee properly for all time they have actually worked. See 29 C.F. R. § 785.48.  Further, employees must be completely relieved from duty for the purpose of eating regular meals. See 29 C.F.R. § 785.19. Employees are not relieved if they are required to perform any duties, whether active or inactive, while eating. *Id*. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating. *Id*.

Moreover, employees need only show that they performed work without compensation and that the employer knew, or should have known, that the uncompensated work was being

performed. Indeed, it is black letter law that an employer has an affirmative duty to prevent unwanted work from being performed. "It is clear an employer's actual or imputed knowledge that an employee is working is a necessary condition to finding the employer suffers or permits that work." *Id.* at 287 (citation omitted); *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981. "An employer who has knowledge that an employee is working, and who does not desire the work be done, has a duty to make every effort to prevent its performance." *Id* at 288 (emphasis added); *see also Forrester*, 646 F.2d at 414 ("An employer who is armed with this knowledge cannot stand idly by and allow an employee to perform overtime work without proper compensation...."); *Mumbower v. Callicott*, 526 F.2d 1183, 1188 (8th Cir.1975 ("The employer who wishes no such work to be done has a duty to see it is not performed."); 29 C.F.R. § 785.13 ("In all such cases it is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed."). Ultimately, "[t]he reason an employee continues to work beyond his shift is immaterial; if the employer knows or has reason to believe that the employee continues to work, the additional hours must be counted." *Reich v. Dep't of Conservation & Natural Res., State of Ala.*, 28 F.3d 1076, 1082 (11th Cir. 1994.

Additionally, damages are ascertainable, which further supports certification. Employees are required to clock in and out using the KRONOS timekeeping system at the beginning of their regularly scheduled shift and after the end of their regularly scheduled shift. This generates a data point with a time stamp to indicate the exact time the employee began and ended her regularly scheduled shift. This time, when reviewed against the actual paid time, will provide an ascertainable basis by which damages may be calculated and extrapolated. Given the data driven analysis involved in these types of claims, they are routinely certified and appropriate for the FLSA collective action mechanism.

Furthermore, testimony by the Plaintiffs and other opt-in plaintiffs will be presented in a representative capacity to prove whether or not employees were provided with bona fide meal periods. *See Bouaphakeo v. Tyson Foods, Inc.*, 765 F.3d 791, 797 (8th Cir. 2014), *aff'd*, 136 S.Ct. 1036, 194 L.Ed.2d 124 (2016) (re-affirming that representative testimony/evidence is appropriate in wage/hour actions); *see also Campbell v. City of Los Angeles*, 903 F.3d 1090, 1116 (9th Cir.

2018) (recognizing that individualized damages calculations are not inherently inconsistent with a collective action: "Individual damages amounts cannot defeat collective treatment under the more forgiving standard of section 216(b) either.").

Accordingly, based on common evidence, Notice should be sent out immediately so that Class Members can protect their rights to participate in this litigation.

### C. The Attached Notice and Consent Adequately Informs Potential Opt-In Plaintiffs Of Their Right To Participate (Or Refrain From Participation) In This Action

A proposed Notice of Pendency of FLSA Collective Action Lawsuit is attached to this Motion as Exhibit "A". A proposed Consent to Join is attached as Exhibit "B". The Notice neutrally describes the lawsuit, Plaintiff's claims, and Defendants' anticipated defenses. *See* Exhibit A, at p. 2. The Notice identifies who may participate in the action, that participation is completely voluntary, and that if the party decides to participate, he or she will be bound by the decision of the court, whether it is favorable or unfavorable. *See* Exhibit A, at pp. 2-4 ("You do not have to join this lawsuit."); Exhibit A, at p. 2 ("To participate in this lawsuit, you must have been employed by Spring Valley Hospital Medical Center at any time from September 10, 2021 to the present as all patient care non-exempt hourly paid persons."); Exhibit A, at p. 3 ("If you choose to join this case, you will be bound by the decision of the court, whether it is favorable or unfavorable."). Accordingly, Plaintiff respectfully requests that the proposed Notice and Consent to Join be approved and that the Court authorize the proposed Notice and Consent to Join be distributed via United States Mail and electronically to the putative FLSA Class.

### D. The Court Should Toll the Statute of Limitations in This Action for the Period of Time That This Motion Is Pending and during the Notice Period

For opt-in plaintiffs in a collective action under § 216(b), the statute of limitations is not tolled until the date on which the opt-in plaintiff's written consent is filed with the court. *See* 29 U.S.C. 256(a); *Lee v. Vance Exec. Prot., Inc.*, 2001 WL 108760 (4th Cir. Feb. 8, 2001) (providing that FLSA action commences for limitations purposes for opt-in plaintiffs on date consent-to-join is filed); *Hoffman v. Sbarro*, 982 F. Supp. 249, 260 (S.D.N.Y. 1997) (noting employees' claims

THIERMAN BUCK
325 W. Liberty Street
Reno, NV 89501
(775) 284-1500 / Fax (775) 703-5027
Email info@thiermanbuck.com / www.thiermanbuck.com

"die daily" until the employee opts into the action.). Under the FLSA, the statute of limitations on each individual "opt-in" plaintiff's claim continues to run until their consent to joinder is filed with the court unless the statute is tolled by a court in view of equitable circumstances. *See* 29 U.S.C. § 256 ("[A]n action . . . shall be considered commenced [by an "opt-in" plaintiff] . . . in the case of a collective or class action under the [FLSA] . . . (b) . . . on the subsequent date on which such written consent is filed in the court in which the action was commenced."); *see e.g.*, *Sperling v. Hoffman-LaRoche, Inc.*, 118 F.R.D. 392, 410-11 (D.N.J. 1988), aff'd in part and appeal dismissed in part, 862 F.2d 439 (3d Cir. 1988), aff'd and remanded, 493 U.S. 165 (1989); *Owens v. Bethlehem Mines Corp.*, 630 F. Supp. 309, 311 (S.D.W. Va. 1986); *Reich v. Southern New Eng. Telecomms. Corp.*, 892 F. Supp. 389, 404 (D. Conn. 1995). Courts may extend the limitations period for filing a consent to join under the doctrine of equitable tolling. *Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946); *see also Partlow v. Jewish Orphans' Home of S. Cal., Inc.*, 645 F.2d 757, 760 (9th Cir. 1981), *abrogated on other grounds by Hoffman La-Roche, Inc. v. Sperling*, 862 F.2d 439, 440 (3d Cir. 1988) (same), aff'd 493 U.S. 165 (1989); *Woodward v. FedEx Freight E., Inc.*, 250 F.R.D. 178, 193 (M.D. Pa. 2008) (same). Further, under certain circumstances, courts may equitably toll the statute of limitations during a period in which motions are pending. *See Sickle v. SCI Western Mkt. Support Ctr.*, 2008 WL 4446539, at *21-23 (D. Ariz. Sept. 30, 2008) (tolling plaintiffs' claims due to pendency of employer's motion to dismiss). Unlike Rule 23 class actions, there is no class-wide toll on the running of the statute of limitations.

Plaintiff acknowledges that federal courts apply equitable tolling when plaintiffs are prevented from asserting claims due to wrongful conduct by defendant or when circumstances beyond a plaintiff's control make it impossible to file claims on time. *See Smith v. Davis*, 953 F.3d 582, at *614 (9th Cir. 2020). It is also true that federal courts in this District have granted equitable tolling based on the reasoning that "the time required for a court to rule on a motion … for certification of a collective action in an FLSA case[] may be deemed 'extraordinary circumstance' justifying application of the equitable tolling doctrine." *Small v. University Medical Center of So. Nevada*, 2013 WL 3043454, at *3 (D. Nev. June 14, 2013) *citing Yahraes*

*v. Restaurant Assocs. Events Corp.*, 2011 WL 844963, at *2 (E.D.N.Y. 2011). In *Small,* the court reasoned that "potential opt-in plaintiffs could be unfairly prejudiced by the court's delay in resolving the Motion" and that defendant was "not unfairly prejudiced because the potential scope of its liability was known when the Complaint was filed." *Id.* at *4.

A toll on the statute of limitations would prevent Defendants from receiving any benefit from unsuccessfully opposing Plaintiff's motion to circulate notice. Indeed, allowing the FLSA's statute of limitations for potential plaintiffs to continue running while a motion for circulation of FLSA notice is being decided encourages a defendant to oppose such motions irrespective of the merits of the motion, because even if the defendant loses and notice is ultimately sent out, defendant will be subject to a shorter liability period as a result of its opposition.

Additionally, Ninth Circuit courts also apply equitable tolling when circumstances of justice require. In applying equitable tolling, the Ninth Circuit Court of Appeals stated, "[a]s with other general equitable principles, application of the tolling doctrine requires a balancing of the injustice to the plaintiffs occasioned by the bar of his claim against the effect upon the important public interest or policy expressed by the limitations statute." *Hatfield v. Halifax PLC*, 564 F.3d 1177, 1185 (9th Cir. 2009). The Court noted that other courts have "permitted a plaintiff to take advantage of tolling based on the filing of a prior class action." *Id.* Further, "equities demand that tolling be permitted because the substantive class [] claims were sufficiently similar to give the defendant notice of the litigation for purposes of applying the tolling rule." *Id.* at 1186. The same rationale applies here; although the present motion involves a collective action class rather than a Rule 23 class, Defendants were on notice of these similar claims such that equity demands a tolling be applied to preserve the FLSA statute for the benefit of the putative collective class members. Thus, Plaintiff requests that the statute of limitations be tolled while this motion is pending and during the notice period.

/ / /

/ / /

/ / /

THIERMAN BUCK
325 W. Liberty Street
Reno, NV 89501
(775) 284-1500 / Fax (775) 703-5027
Email info@thiermanbuck.com / www.thiermanbuck.com

## V. CONCLUSION

For all the foregoing reasons, Plaintiff respectfully submits that this Motion for Circulation of Notice Pursuant to 29 U.S.C. §216(b) be granted, and Notice should be issued to potential opt-in plaintiffs as soon as practicable.

DATED: September 26, 2024           Respectfully submitted,

                                    THIERMAN BUCK

                                    */s/Leah L. Jones*
                                    Joshua D. Buck
                                    Leah L. Jones

                                    *Attorneys for Plaintiff*
                                    *and the putative classes*

### Index of Exhibits

| | |
|---|---|
| A. | Proposed Notice of Pendency of FLSA Collective Action Lawsuit |
| B. | Proposed Consent to Join |
| C. | Spring Valley Stubbins Summary and Detail |

**CERTIFICATE OF SERVICE**

Pursuant to FRCP 5(b), I hereby certify that on this date service of the foregoing **PLAINTIFF'S MOTION FOR CIRCULATION OF NOTICE PURSUANT TO 29 U.S.C. § 216(b)** was made by depositing a true and correct copy of the same for mailing by first class mail, postage prepaid thereon, at Reno, Nevada to the following address:

Wendy M. Krinck
WKrincek@littler.com
3960 Howard Hughes Pkwy. Suite 300
Las Vegas, NV 89169

*Attorney for Defendants*

DATED: September 26, 2024

                                            */s/Jennifer Edison-Strekal*
                                            An Employee of Thierman Buck

**THIERMAN BUCK**
325 W. Liberty Street
Reno, NV 89501
(775) 284-1500 / Fax (775) 703-5027
Email info@thiermanbuck.com / www.thiermanbuck.com