UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| TAYLOR STUBBINS, on behalf of herself and all other similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>SPRING VALLEY HOSPITAL MEDICAL CENTER; VALLEY HEALTH SYSTEMS, INC.; UNIVERSAL HEALTH SERVICES, INC.; and DOES 1 through 50, inclusive<br><br>Defendants. | Case No. 2:24-cv-01672-EJY<br><br>**ORDER** |

Pending before the Court is Defendants' Motion to Compel Arbitration (ECF No. 16), which the Court considered along with the Opposition (ECF No. 31) and Reply (ECF No. 34). Also pending is Plaintiff's Motion for Circulation of Notice (ECF No. 10). Because the Motion to Compel Arbitration is granted, the Motion for Circulation of Notice is denied as moot.

**I.    Relevant Background**

   A.    <u>The Applicant Acknowledgement and Alternative Resolution of Conflict Agreement</u>.

Plaintiff is a former employee of Spring Valley Hospital, which is part of the Valley Health System. Apparently, when first applying for her position, Plaintiff completed an Applicant Acknowledgment (the "Acknowledgement") form that bears her March 21, 2020 electronic signature.[1] ECF No. 31-1. The Acknowledgement includes several provisions pertinent to the issue presented to the Court. These include paragraphs 4, 13, and 14 quoted below as follows:

> If employed, I may terminate my employment at any time without notice or cause, and the Company may terminate or modify the employment relationship at any time without prior notice or cause. In consideration of my employment, I agree to conform to the rules and regulations of the Company, and I understand that no department head or representative of the Company, other than the President of the Company, has any authority to enter into any agreement, oral or written, for

---

[1] The Court notes that Plaintiff refers to the Acknowledgement as an "Employment Agreement." ECF No. 31 at 1, 2, and repeatedly thereafter. Plaintiff also states that she first "applied for a job … on March 21, 2020" and that the Acknowledgement was part of the application process to which she was required to agree before she "could … proceed with the application process." *Id*. at 4.

1

employment for any specified period of time or to make any agreement or assurances contrary to this policy. [*Id*. ¶ 4.]

READ CAREFULLY BEFORE SIGNING I agree that any claim or lawsuit relating to my service with the Company or any of its subsidiaries must be filed no more than six (6) months after the date of the employment action that is the subject of the claim or lawsuit. I waive any statute of limitations to the contrary. [*Id*. ¶ 13.]

I will settle any and all claims, disputes or controversies arising out of or related to my application or candidacy for employment, employment and/or cessation of employment, exclusively by final and binding arbitration …. Such claims include but are not limited to … the Fair Labor Standards Act [the "FLSA"], …[and/or] wage or benefit laws … unless specifically prohibited by law. I understand that I will not have the right in court or in an arbitration proceeding to participate in a class action, either as a class representative or class member …. The initiation and conduct of any arbitration shall be in accordance with the then-in-effect National Rules for the Resolution of Employment Disputes of the American Arbitration Association ("AAA"). [*Id*. ¶ 14.]

Following these paragraphs, the Acknowledgement states: "I AGREE TO THE UHS CERTIFICATION AND AGREEMENT." Plaintiff checked the "yes" box appearing immediately after this statement. A "no" box also appears, which Plaintiff did not check. *Id*. at 5. There is no integration clause (discussed below) in the Acknowledgement. *Id*. at 4-5.

On May 28, 2020, Plaintiff was offered a position with Spring Valley Hospital, which she accepted that same day. ECF No. 31 at 4. On May 29, 2020, Plaintiff electronically signed the Alternative Resolution for Conflicts Agreement (the "ARC Agreement" or the "Agreement"). ECF No. 16-2 at 8. This is a four page document that states in the preamble: "ARC is an agreement to arbitrate disputes in the workplace. ARC is a contract between you, the employee …, and SPRING VALLEY HOSP MED CENTER. ARC does not change any other terms and conditions of employment; it is a contract where you and SPRING VALLEY HOSP MED CENTER agree to resolve any covered legal disputes through mandatory arbitration instead of by way of court or jury trial. It is your responsibility to review the ARC Agreement. …" *Id*. at 3. Paragraph 1 of the ARC Agreement is titled "How This Agreement Applies" and provides, in pertinent part, that claims under the FLSA "and state statutes, … addressing the same or similar subject matters" are covered by the Agreement. *Id*. Paragraph 2 of the ARC Agreement explains that before an arbitration "the parties are encouraged" to mediate "covered claims." *Id*. Paragraphs 3, 4, 5, and 6 discuss what claims are

not covered by the Agreement, how an arbitrator is selected, how to start an arbitration proceeding, and how arbitrations are conducted. *Id*. at 3-5.

Paragraph 7 of the ARC Agreement is titled "Paying for the Arbitration" and states, in pertinent part:

> Each party will pay the fees for his, her or its own attorneys, subject to any remedies to which that party may later be entitled under applicable law. However, in all cases where required by law, the Company will pay the Arbitrator's and arbitration fees. If under applicable law the Company is not required to pay all of the Arbitrator's and/or arbitration fees, such fee(s) will be apportioned between the parties in accordance with said applicable law ….

*Id*. ¶ 7.

Paragraph 9 of the ARC Agreement is titled "An Employee's Right to Opt Out of Arbitration." *Id*. ¶ 9. This title, and the title of all paragraphs in the ARC Agreement, are bolded. The first sentence of paragraph 9 is also bolded and states: "**Arbitration is not a mandatory condition of Employee's employment at the Company, and therefore an Employee may submit a form stating that the Employee wishes to opt out and not be subject to this Agreement.**" *Id*. (emphasis in original). Paragraph 9 goes on to explain that in order to opt out of arbitration employees "must submit a signed and dated statement on a[n] 'Alternative Resolution for Conflicts Agreement Opt Out Form'" that is available from local or corporate human resources "or online at www.uhsinc.com/careers/ARC Program." *Id*. To be effective, the signed and dated form must be submitted within 30 days of the date on which the employee received the ARC Agreement. *Id*. Paragraph 9 then continues:

> An Employee who timely opts out as provided in this paragraph will not be subject to any adverse employment action as a consequence of that decision and may pursue available legal remedies without regard to this Agreement. **Should an Employee not opt out of this Agreement within 30 days of the Employee's receipt of this Agreement, continuing the Employee's employment constitutes mutual acceptance of the terms of this Agreement by Employee and the Company.** An Employee has the right to consult with counsel of the Employee's choice concerning this.

*Id*.

Paragraph 10 of the ARC Agreement contains an integration clause, which states: "This Agreement is the full and complete agreement relating to the formal resolution of employment-

3

related disputes. Except as stated in paragraph 6[] above, in the event any portion of this Agreement is deemed unenforceable, the remainder of this Agreement will be enforceable." *Id*. On the page following paragraph 10, the ARC Agreement states: "AGREED: SPRING VALLEY HOSP MED CENTER." *Id*. at 7. The last page of the document shows Plaintiff's electronic signature. *Id*. at 8.

### B.   The Parties' Arguments.

Plaintiff contends she has no recollection of signing the ARC Agreement, but does appear to recall the arbitration provision in the Acknowledgement. ECF No. 31 at 4-5. Importantly, Plaintiff does not dispute the authenticity of her electronic signature on the ARC Agreement, which was attested to by Defendants through the Declaration of Curt Shaner. *Id*. at 5. Plaintiff admits she did not submit an opt out form contending this is because she was not aware of the ARC Agreement. *Id*.

In sum, Plaintiff says the ARC Agreement (referred to by Plaintiff as "inoperable") is unenforceable because the Acknowledgement "conditioned any subsequent change of any agreement between Plaintiff [and] Defendants, such as an agreement to arbitrate disputes, to only be made by the President." *Id*. at 7. Based on the terms in the Acknowledgment, and that the ARC Agreement, supposedly, fails to comply with "the President-only authorization clause contained" in the Acknowledgement, Plaintiff contends the ARC Agreement "is … inoperable on its face." *Id*. at 8.

Plaintiff further argues that even if the ARC Agreement is "operable" it cannot be enforced because it is procedurally and substantively unconscionable. *Id*. at 8-12. Intertwined in these arguments, Plaintiff says the arbitration provision in the Acknowledgement is also unenforceable. Unenforceability of the agreements variously arises from: (1) the electronic presentation of the agreements; (2) no witness to Plaintiff's review or signature; (3) the "red-herring" opt-out provision in the ARC Agreement derived from, according to Plaintiff, her lack of recollection regarding reviewing the Agreement that, in turn, renders the ARC Agreement illusory and, thus, leads back to Plaintiff's supposed continued obligation to arbitrate under the Acknowledgement; (4) the Acknowledgement was one-sided; (5) Plaintiff was "forced" to sign the Acknowledgement in order to apply for her job; and (6) the six month limitations period in the Acknowledgement is applicable

4

only to Plaintiff. *Id*. Plaintiff also argues the Acknowledgement and ARC Agreements require strict confidentiality (*id*. at 10),[2] and, Plaintiff takes issue with the fee shifting clause in the Acknowledgement and ARC Agreement. ECF No. 31 at 11-12.[3]

Defendants argue the provision in the Acknowledgement that discusses modification requiring presidential authority is limited to the subject matter of the paragraph in which that language appears. ECF No. 34 at 10. That is, the modification to which paragraph 4 of the Acknowledgement refers is limited to addressing at-will employment allowing termination of employment with or without notice and at any time by either the employee or the employer. *Id*. citing ECF No. 16-2 ¶ 4. Defendants' Motion and Reply further argues the ARC Agreement is applicable and enforceable based on its integration clause and that a prior Nevada Supreme Court decision found the Agreement enforceable. ECF Nos. 16 at 2; 34 at 2-3. Defendants state the ARC Agreement was not a condition of employment and is neither procedurally nor substantively unconscionable, both of which must be present to undermine the validity of the Agreement. *Id*. respectively at 6-7; 3-8.

**II.   Discussion**

   A.   <u>The Federal Arbitration Act and Nevada Law Favor Arbitration</u>.

Nevada Supreme Court and U.S. District Court for the District of Nevada decisions recite the same standard applicable to the preference for and enforceability of arbitration agreements. The Federal Arbitration Act ("FAA") states that a "written provision in … a contract evidencing a transaction involving commerce to settle by arbitration … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "By its terms, the … [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on

---

[2]   The Court found no confidentiality provision in the Acknowledgment pertaining to arbitration. ECF No. 31-1 at 4-5. In contrast, the ARC Agreement states "Except as may be permitted or required by law, as determined by the Arbitrator, neither a party nor an Arbitrator may disclose the existence, content, or results of any arbitration … without the prior written consent of all parties." ECF No. 16-2 at 6.

[3]   There is no fee shifting provision in the Acknowledgement (ECF No. 31-1); and, contrary to Plaintiff's contention, the ARC Agreement states "in all cases where required by law, the Company will pay the Arbitrator's and arbitration fees" as well as that while each party will initially pay his/her/its own attorney's fees, this is "subject to any remedies to which that party may later be entitled under applicable law." ECF No. 16-2 at 6.

5

issues as to which an arbitration agreement has been signed." *Mallia v. Drybar Holdings, LLC*, Case No. 2:19-cv-00179-RFB-DJA, 2020 WL 1250817, at *2 (D. Nev. Mar. 16, 2020) *citing Dean Witter Reynolds, Inc. v. Byrd*, 270 U.S. 213, 218 (1985). As explained, "[b]y its terms, the … [FAA] limits the district court's role to determining (1) whether the parties agreed to arbitrate, and, if so, (2) whether the scope of that agreement to arbitrate encompasses the claims at issue." *Id*. *citing Nguyen v. Barns & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014). Further, the FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration …." *Id. citing Moses H. Cone Mem'l Hosp. v. Mercury Cost. Corp.*, 460 U.S. 1, 24-25 (1983). The "[C]ourt has little discretion to deny an arbitration motion, since the … [FAA] is phrased in mandatory terms." *Id. citing Republic of Nicar. v. Std. Fruit Co.*, 937 F.2d 469, 475 (9th Cir. 1991).

In *Tallman v. Eighth Judicial Dist. Ct.*, 359 P.3d 113 (Nev. 2015), the Nevada Supreme Court stated:

> NRS 38.219(1) expresses Nevada's fundamental policy favoring the enforceability of arbitration agreements. Similar to § 2 of the Federal Arbitration Act (FAA), 9 U.S.C. § 2 (2013), it provides that, "An agreement contained in a record to submit to arbitration any existing or subsequent controversy arising between the parties to the agreement is valid, enforceable and irrevocable except ... upon a ground that exists at law or in equity for the revocation of a contract." "Whether a dispute arising under a contract is arbitrable is a matter of contract interpretation, which is a question of law that we review de novo." … [*State ex rel. Masto v. Second Judicial Dist. Court,* 199 P.3d 828, 832 (2009).] "As a matter of public policy, Nevada courts encourage arbitration and liberally construe arbitration clauses in favor of granting arbitration." *Id.*

B.   The ARC Agreement is Enforceable and Applicable to this Dispute.

   *1.   Plaintiff's Lack of Memory.*

The Court starts its analysis with consideration of whether Plaintiff's lack of memory regarding the ARC Agreement precludes its application to the present dispute. To this end, Plaintiff does not dispute that she electronically signed the Acknowledgement, which preceded employment by more than a month, in which arbitration is briefly discussed. ECF Nos. 31 at 4; 31-1 ¶ 14. Plaintiff also does not dispute (although, she states she does not recall) that one day after accepting employment she signed the ARC Agreement. ECF No. 31 at 4-5. Plaintiff admits she did not submit an opt out form. *Id*. at 5.

6

A party's signature on an arbitration agreement is presumptive evidence that an agreement was formed given that a person who signs a contract is presumed to know its contents and assent to the terms. *Morales v. Rent-A-Center, Inc.*, 306 F.Supp.2d 175, 181 (D. Conn. 2003) *citing Gruber v. Louis Hornick & Co. Inc.*, Case No. 020 Civ. 5092, 2003 WL 21222541, at *2 (S.D.N.Y. May 23, 2003). As stated by the U.S. District Court for the District of Nevada, a party's argument that she "did not have specific knowledge of signing the particular arbitration agreement [at issue], and that the contents of the arbitration agreement were not specifically pointed out to" her is ineffective because "under Nevada law, one who signs an agreement is presumed to know the contents therein, and … [when the party seeking to avoid the agreement] offers no evidence that Defendants procured … [her] 'eSign' signature through fraud or another wrongful act," the proper conclusion reached is that the plaintiff consented to the agreement. *Mallia*, 2020 WL 1250817, at *3. *See also Jaffey v. Del Taco Rests., Inc.*, Case No. 2:17-CV-2600 JCM (PAL), 2018 WL 3997261, at *2 (D. Nev. Aug. 21, 2018) (finding lack of recall "insufficient to refute the existence of a signed arbitration agreement"). When the above law is applied to the facts and circumstances presented here, the Court finds Plaintiff signed the ARC Agreement, her e-signature is effective, there is no argument let alone evidence of any wrongful act, Plaintiff is presumed to know the contents of the Agreement, and Plaintiff consented to the terms therein.[4] Given that Plaintiff does not dispute she electronically signed the ARC Agreement, the lack of a witness, which is not required by any law the Court could find, is of no import.

With respect to Plaintiff's contention that her lack of recollection regarding the ARC Agreement renders the contract illusory, she is wrong. Plainly stated Nevada law holds that a party who signs (or esigns) an agreement, not shown to be procured by fraud or other wrongful act, is presumed to know the contents of the contract and to be bound to the terms—even when there is no recollection of signing or reviewing the agreement. Thus, a lack of recollection cannot effect a finding that an agreement is "illusory."

---

[4] *See* Plaintiff's Declaration (ECF No. 31-1), the uncontested Declaration of Curt Shaner (ECF No. 16-3), and Plaintiff's Opposition (ECF No. 31 at 5) stating: "Plaintiff, however, does not dispute the authenticity of the digital audit record set forth in the Declaration of Curt Shaner (ECF No. 16-3)"; and that "Plaintiff never submitted an opt-out form …" (ECF No. 31 at 5).

7

Further, a promise is illusory when a contracting party's obligation is purely optional. *See* 3 *Williston on Contracts* § 7:14 (4th ed. 2012). The Restatement (Second) of Contracts § 77 (Illusory or Alternative Promises) states: "A promise or apparent promise is not consideration if by its terms the promisor or purported promisor reserves a choice of alternative performances unless: (a) each of the alternative performances would have been consideration if it alone had been bargained for; or (b) one of the alternative performances would have been consideration and there is or appears to the parties to be a substantial possibility that before the promisor exercises his choice events may eliminate the alternatives which would not have been consideration." (Cleaned up.) Hunting down case law regarding illusory arbitration agreements, the Court found this: "a promise to arbitrate is illusory and unenforceable if the contract permits one party to legitimately avoid its promise to arbitrate, 'such as by unilaterally amending or terminating the arbitration provision and completely escaping arbitration.'" *A-1 Freeman Moving & Storage LLC v. Ortiz Galindo*, Case No. 08-23-00001-CV, 2023 WL 5486236, at *3 (Tx. Ct. App. Aug. 23, 2023) *quoting Royston, Rayzor, Vickery, & Williams, LLP v. Lopez*, 467 S.W.3d 494, 505 (Tex. 2015) (citing *In re 24R, Inc.*, 324 S.W.3d 564, 567 (Tex. 2010); *J.M. Davidson Inc. v. Webster*, 128 S.W.3d 223, 236 (Tex. 2003).

The promises made in the ARC Agreement are mutual—that is, Defendants are obligated to arbitrate all claims covered by the Agreement just as Plaintiff is obligated to arbitrate all covered claims. ECF No. 16-2. There is no provision applicable solely to Plaintiff or Defendants except that Defendants cannot opt out of the Agreement, while Plaintiff can do so. *Id.* ¶ 9. There is no provision allowing Defendants to unilaterally change the terms of the ARC Agreement and Plaintiff does not argue Defendants' obligations are purely optional. ECF Nos. 16, 16-2 generally. Nor does Plaintiff allege there was a lack of consideration for the Agreement. ECF No. 16, generally. In sum, the Court finds no legal or factual basis to conclude the ARC Agreement is illusory.

        2.     *Integration*.

The Court next considers the absence of an integration clause in the Acknowledgement and the presence of an integration clause in the ARC Agreement. The inclusion of an integration clause in a document means the parties intended that document to be the "full and complete agreement" of the parties. *Garcia v. ISS Facility Services, Inc.*, Case No. 19-cv-07807-RS, 2020 WL 13907337, at

\*\*2-3 (N.D. Cal. Mar. 20, 2020) (finding a mediation agreement with an integration clause superseded an arbitration agreement lacking such a clause). "A written contract is considered integrated when the parties intend it to constitute the complete and final expression of their agreement. … When a contract lacks an express integration clause the district court must determine whether the parties intended their agreement to be an integrated contract by reading the writing in light of the surrounding circumstances." *Starter Corp. v. Converse, Inc.*, 170 F.3d 286, 295 (2nd Cir. 1999) (internal citations and quote marks omitted).

The Court finds the presence of the integration clause in the post-employment ARC Agreement, and the lack of an integration clause in the pre-employment Acknowledgement, supports the conclusion that the parties intended the ARC Agreement to be the complete and final expression of their agreement to arbitrate, and that the terms of the ARC Agreement are controlling. The language in the ARC Agreement, entered after the Acknowledgement, makes clear that it is the full and complete agreement relating to the formal resolution of employment related disputes. ECF No. 16-2 ¶ 10. The ARC Agreement was presented to Plaintiff the day after she accepted employment again signaling the parties' intent that the Agreement would apply to any covered claims going forward especially given the far greater detail of the dispute resolution process to which the parties were bound. *Garcia*, 2020 WL 13907337, at \*2.

The ARC Agreement unquestionably applies to the dispute at issue (FLSA and wage-hour under state law). Stating the obvious, the Acknowledgement, entered into pre-employment, contains a single paragraph that fails to address the sum and substance of arbitration addressed in the ARC Agreement. *Compare* ECF No. 31-1 *and* ECF No. 16-2. The integrated and thorough ARC Agreement, which post-dates employment, includes an express opt-out provision, a non-retaliation provision, how arbitrators are selected, how an arbitration will proceed, payment for the arbitration, and the legal limitations on the applicability of the Agreement. ECF No. 16-2. In comparison, the Acknowledgement is a one and one-half page document that dedicates one paragraph to arbitration. ECF No. 31-1 ¶ 14. Plaintiff does not address the presence of the integration clause in the ARC Agreement, the absence of such a clause in the Acknowledgement, or the depth of the ARC Agreement (except to argue unconscionability).

9

Based on a review of the entirety of the circumstances surrounding the two agreements, the Court finds the parties intended the ARC Agreement to be their integrated binding agreement pertaining to alternative dispute resolution.

### 3. *No Signature by the President on the ARC Agreement.*

The Court finds the failure of the "President" to sign the ARC Agreement does not invalidate the Agreement. First, the provision in which a signature by "President of the Company," paragraph 4 of the Acknowledgement, is discrete and does not state or infer it is applicable to all other provisions of the Acknowledgement. That is, paragraph 4 of the Acknowledgement pertains to at-will employment and the parties' mutual right to terminate the employment relationship at any time. ECF No. 31-1 ¶ 4. The paragraph begins by explaining Plaintiff's employment is at-will—she or the employer may terminate her employment at any time and without notice or cause. *Id*. The paragraph then states that Plaintiff "understand[s] that no department head or representative of the Company, other than the President of the Company, has any authority to enter into any agreement, oral or written, *for employment for any specified period of time or to make any agreement or assurances contrary to this policy*." *Id.* (emphasis added). Reading the plain language of the Acknowledgement, it is clear and unambiguous that signature of the president is required if a term of employment is offered other than one that is terminable without notice or cause. Nothing about the construction of the paragraph or the Acknowledgement suggests a president's signature is required to modify any other term appearing in the Acknowledgement. *Id*.

Further, "[w]hile NRS 38.219(1) requires that the arbitration agreement be 'contained in a record,' it does not require that the written record of the agreement to arbitrate be signed." *Tallman*, 359 P.3d at 119 (internal citations omitted). Courts enforce arbitration agreements not signed by employers when evidence establishes the employer's intent to be bound by the agreement, which is the case here. *See Fiorentine v. Marvell Semiconductor Inc.*, Case No. 24-cv-01136-MMC, 2024 WL 3012805, at *3 (N.D. Cal. June 14, 2024) (applying California law, similar to NRS 38.219(1), that does not require an arbitration agreement to be signed by both parties); *Lara v. Onsite Health, Inc.*, 896 F.Supp.2d 831, 844 (N.D. Cal. 2012); *Hickerson v. Pool Corporation*, Civil Action No. 19-cv-2229-CMA-STV, 2020 WL 5016938, at *5 (D. Col. Aug. 25, 2020) (adopting the reasoning

in *Sweeney v. Tractor Supply Co.*, 390 F.Supp.3d 1152, 1157 (N.D. Cal. 2019) (factors that indicate employer's intent to be bound by unsigned arbitration agreement)). Here, all facts before the Court demonstrate that even if the president's signature was for some reason required on the ARC Agreement, the failure of that signature does not invalidate the Agreement as Defendants clearly intended to be bound and have acted in accordance with that intent. Plaintiff's argument that the absence of the president's signature on the ARC Agreement invalidates the ARC Agreement fails under the law as applied to the facts of this case.

    4.    *Substantive Unconscionability.*[5]

    i.    The <u>*Valley Health* decision</u>.

Nevada law recognizes that in order for an arbitration agreement to be found unconscionable, there must be a finding of procedural and substantive unconscionable. *Valley Health Sys., LLC v. Alexander*, Case No. 84541, 2023 WL 1453227, at *1 (D. Nev. Jan. 12, 2023) (Unpub.) *citing U.S. Home Corp. v. Michael Ballesteros Tr.*, 415 P.3d 32, 40 (Nev. 2018). "The substantive element of unconscionability focuses on the actual terms of the contract and assesses whether those terms are overly harsh or one-sided." *Henderson v. Watson*, Case No. 64545, 2015 WL 2092073, at *3 (Nev. Apr. 29, 2015) (Table) (internal citation omitted). Here, the Court begins with the Nevada Supreme Court decision in *Valley Health* because this decision, albeit unpublished, analyzed whether the same ARC Agreement that is at issue in this case was substantively unconscionable. 2023 WL 1453227, at *1. The Nevada Supreme Court found waiver of a jury trial, in the absence of "any other evidence of substantive unconscionability … the ARC Agreement was not unconscionable …." *Id*. However, this does not end the Court's analysis as other provisions are challenged in the present matter.

    ii.    <u>Confidentiality</u>.

Whether the confidentiality provision in the ARC Agreement is substantively unconscionable is a close call. This provision is limited by language stating "[e]xcept as permitted or required by law, as determined by the Arbitrator," the parties and the arbitrator are to maintain confidentiality of the "existence, content, … [and] results of any arbitration" engaged in by the

---

[5] To the extent Plaintiff opposes Defendants' Motion arguing the Acknowledgement is unconscionable, the Court finds the Acknowledgement does not control and is not applicable to arbitration between the parties and, for this reason, the Court does not address these arguments.

11

parties "without the prior written consent of all parties." ECF No. 16-2 ¶ 8. As explained in *Barnett v. V.T. Motors LLC*, "confidentiality provisions … are unconscionable 'if they favor the employer, if they are too broad, and if they essentially impose a gag order such that employees are 'unable to mitigate the advantages inherent in being a repeat player.'" Case No. CV-21-01195-PHX-SPL, 2021 WL 5759113, at *5 (D. Ariz. Dec. 3, 2021) (quoting *Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1078 (9th Cir. 2007), overruled on other grounds in *Ferguson v. Corinthian Colleges, Inc.*, 733 F.3d 928, 933 (9th Cir. 2013). Further, the court in *Barnett* noted a requirement that "anything and everything pertaining to the arbitration remain confidential" was unconscionable because it was "unfairly one-sided," given that a defendant "would have knowledge of prior arbitrations in which they were involved while … plaintiffs … would be kept in the dark." *Id.* (internal citation omitted).

In *Davis*, the court found plaintiff showed the confidentiality "provision unfairly" benefitted the employer who had "institutional knowledge of prior arbitrations" while "individual litigants … are deprived from obtaining information regarding any prior arbitrations" rendering the employer "the only party who would obtain any benefit from this provision without receiving any negative impact in return." *Davis*, 485 F.3d at 1079. However, the Court made clear that confidentiality provisions (under California law) were not *per se* unconscionable; rather, "[t]he concern is … with the scope of the language of the" dispute resolution program. *Id. citing Cf. Zuver v. Airtouch Commc'ns, Inc.*, 103 P.3d 753, 765 (Wash. 2004) (En Banc).

Six years later, in *Kilgore v. Keybank, Nat. Ass'n*, 718 F.3d 1052 (9th Cir. 2013) (*en banc*), the Ninth Circuit was presented with an arbitration provision that impacted former students of a failed flight training school who filed a putative class action against a bank that originated their student loans as well as the loan servicer. *Id.* at 1055. The promissory note the students signed contained an arbitration clause that included a confidentiality provision requiring both parties to maintain the confidentiality of any claim they arbitrated. *Id.* at 1056; *id.* at 1064 (Pregerson, J., dissenting). The court in *Kilgore* held: "Although we have found confidentiality provisions to be substantively unconscionable when applied to a large class of customers, *Ting v. AT&T*, 319 F.3d 1126, 1151-52 (9th Cir. 2003), the small number of putative class members in this case (approximately 120) mitigates such concerns. In any event, the enforceability of the confidentiality

clause is a matter distinct from the enforceability of the arbitration clause in general. Plaintiffs are free to argue during arbitration that the confidentiality clause is not enforceable." *Id.* at 1059 n.9.

Here, of course, the number of future class members is unknown. Nonetheless, Plaintiff argues the confidentiality provision effects a "total gag order" that would prevent her from "discussing her arbitration with" the 17 individuals who have already opted into this matter, some of whom are apparently witnesses in Plaintiff's case. ECF No. 31 at 11. Plaintiff also argues the confidentiality provision would prohibit the opt-ins from "using any arbitral decision that would affect their claims for wages." *Id.*

The number of current class members—17—is not large. More importantly, the language granting the arbitrator the power to determine whether the existence, content, or results of any arbitration must remain confidential also demonstrates the arbitrator has within his/her authority the power to grant Plaintiff the ability to discuss the existence and contents of an arbitration with others (opt ins or third parties) who will serve as witnesses. Like *Kilgore*, the enforceability of this confidentiality provision is challengeable by Plaintiff during the arbitration. Finally, the language at issue is distinguishable from other provisions where blanket, broad confidentiality provisions are included in an agreement and are not subject to review by the arbitrator.

The Court also notes the discussion in *Mikhak v. Univ. of Phoenix*, Case No. C16-00901CRB, 2016 WL 3401763, at \*\*12-13 (N.D. Cal. June 12, 2016). In *Mikhak*, the court summarized the holdings in *Davis*, *Ting*, and *Mohamed v. Uber Tech., Inc.*, 109 F. Supp. 3d 1185 (N.D. Cal. 2015), affirmed in part and reversed in part on other grounds by *Mohamed v. Uber Technologies, Inc.*, 848 F.3d 1201 (9th Cir. 2016)). *Id.* Finding the arbitration provision in *Mohamed* gave the arbitrator "authority to determine that disclosure is permitted or required by law," the *Mikhak* court found the plaintiff's argument in support of unconscionability was unpersuasive because she "did not argue that the confidentiality agreement would handicap her ability to secure a fair resolution to her dispute." *Id.* at \*13 (internal citation omitted). Like the plaintiff in *Mikhak*, Plaintiff in this matter does not say she would be handicapped by being prohibited from using arbitral decision in her case, but instead that the "opt-in plaintiffs … [would] potentially" be hindered in "their claims for wages." ECF No. 31 at 11. Except in a limited number of well defined circumstances, "judicial power exists

only to redress or otherwise to protect against injury to the complaining party, even though the court's judgment may benefit others collaterally." *Warth v. Seldin*, 422 U.S. 490, 490 (1975). Therefore, a litigant may invoke only his or her "own legal rights or interests, and cannot rest his [or her] claim to relief on the legal rights or interests of third parties …." *Id*. (internal citation omitted).

The Court finds this case is similar to *Mikhak* in which the confidentiality provision was not unconscionable as applied to the case before the Court. The ARC Agreement, as applied to Plaintiff based on the arguments she makes, will not prevent from discussing the existence or content of her arbitration with witnesses (whether current opt-ins or third party strangers) upon the arbitrator's determination that such discussions are permissible under law. Plaintiff is free to make this argument during arbitration. The Court reasonably infers that like any confidential proceeding, such as one involving trade secrets, witnesses may be informed of facts and issues surrounding the dispute when testifying as percipient witnesses. To the extent the outcome of other arbitrations are relevant to the issues in dispute in Plaintiff's arbitration, the arbitrator will also be free to order the disclosure of such information. Nonetheless, and despite the similarities to *Mikhak*, the Court finds whether the language of the confidentiality provision is substantively unconscionable too close call to call. Importantly, however, the Court notes that even if the confidentiality provision is substantively unconscionable, in the absence of procedural unconscionability, the agreement remains enforceable. *Henderson*, 2015 WL 2092073, at *3 (the presence of the confidentiality provision alone is not sufficient to establish the high degree of substantive unconscionability necessary to render the arbitration article unenforceable). Further, if this provision is unconscionable, but severable, the ARC Agreement remains enforceable. *Cox v. Station Casinos, LLC*, Case No. 2:14-cv-638-JCM-VCF, 2014 WL 3747605, at *5 (D. Nev. June 24, 2014) (internal citation omitted).

                iii.      <u>Fee/Cost Shifting</u>.

The fee/cost shifting provision of the Arc Agreement is the only other basis upon which Plaintiff argues this Agreement is unconscionable. ECF No. 31 at 10-12. Fee and cost shifting has previously been treated by the Nevada Supreme Court as an issue of substantive unconscionability. *See Henderson*, 2015 WL 2092073, at **1, 3 (in which the court treated a provision relating to payment of arbitration costs as one considered under substantive unconscionability).

Here, the Court finds the fee and cost shifting provision does not establish substantive unconscionability. The law on this issue is clear. When an employer imposes arbitration on an employee as a condition of employment, the arbitration agreement cannot impose on the employee any expense the employee would not bear if she brought her claim in court. *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 1004 (9th Cir. 2010). At the beginning of paragraph 9 of the ARC Agreement, its states in bold: **"Arbitration is not a mandatory condition of Employee's employment** …." ECF No. 16-2 ¶ 9. The Agreement thereafter provides an opt-out procedure and a non-retaliation provision. *Id*. ¶¶ 9-10. Moreover, the Nevada Supreme Court notes the Agreement's bolded opt-out provision is written "in relatively layperson's terms." *Valley Health*, 2023 WL 1453227, at *2. Thus, the ARC Agreement is not a condition of employment and Ninth Circuit case law holding an employer must pay all expenses for arbitration when arbitration *is* a condition of employment does not apply in this case.

Plaintiff nevertheless argues the fee and cost shifting provision of the ARC Agreement renders her "responsible for paying half of the arbitration fees and costs, including the fees of the arbitrator." ECF No. 31 at 11. Plaintiff ignores language in the Agreement stating "in all cases where required by law, the Company will pay the Arbitrator's and arbitration fees." ECF No. 16-2 ¶ 7. Only when law does not require Defendants to pay such fees, are they to be apportioned. *Id*. The Agreement also makes clear that while Plaintiff will initially pay her own attorney fees, these expenses are subject to any remedy the arbitrator determines Plaintiff is entitled to as a matter of law. *Id*. The Agreement also includes notice that an employee has a right to consult an attorney before signing. *Id*. ¶ 9.

The Court finds that the fee/cost shifting provisions similar to the one at bar have been held not to establish substantive unconscionability. *Sloan v. Ladah Law Firm PLLC*, Case No. 2:19-cv-01343-JAD-VCF, 2020 WL 5819771, at *2 (D. Nev. Aug. 31, 2020); *Ashbey v. Archstone Property Management, Inc.*, 612 Fed. App. 430, 431-32 (9th Cir. 2015) (applying California law). In *Scott-Ortiz v. CBRE Incorporated*, 501 F.Supp.3d 717, 727 (D. Ariz. 2020), the Court considered a provision stating "each party shall pay for its own costs and attorneys' fees, if any, except as otherwise required by law." The plaintiff argued the clause was unconscionable because of the

inconsistency "with the federal civil rights statute, 42 U.S.C. § 1988(b), which provides that prevailing parties may recover their fees and costs." *Id*. (internal quote marks omitted). The court disagreed finding: "As an initial matter, it's not clear that the challenged clause would have any impact on Scott-Ortiz's ability, should he prevail during the arbitration proceeding, to seek recovery of his fees and costs. Although the clause creates a default rule that 'each party shall pay for its own costs and attorneys' fees,' it also clarifies that this default rule is subject to an exception: 'except as otherwise required by law.'" *Id*. (an internal bracket and capitalization removed).

The Court reviewed *D.R. Horton, Inc. v. Green*, 96 P.3d 1159 (Nev. 2004), cited by both parties. This case did not involve an employment relationship, but did involve an arbitration provision the Nevada Supreme Court found difficult to read, written in an extremely small font, and appearing on the back page of the general agreement at issue with signature lines on the front page. *Id*. at 1164. These findings are contrary to the finding in *Valley Health* in which the Arc Agreement at issue in this case was considered by the Nevada Supreme Court, which concluded the terms of the Agreement to be "clear," "written in relatively layperson's terms," provided "the right to consult counsel," and the "right not to be retaliated against for opting out" (2023 WL 1453227, at *2) strongly indicating (albeit not plainly stating) the Agreement is conscionable.[6]

After considering all of the above, the Court finds the weight of the law supports the conclusion that the language in paragraph 7 of the ARC Agreement is not substantively unconscionable. However, because this provision and the confidentiality provisions are heavily contested, the Court considers the issue of severability.

                iv.    <u>Severability</u>.

Paragraph 10 of the ARC Agreement states, in pertinent part: "Except as stated in paragraph 6 above, in the event any portion of this Agreement is deemed unenforceable, the remainder of this Agreement will be enforceable." ECF No. 16-2 ¶ 10. In a single, short paragraph, Plaintiff argues severability is not available because the Acknowledgement does not have a severability clause and the "Court [would have] to completely re-write the arbitration agreements by molding the …

---

[6] Other cases cited by Plaintiff are distinguishable as they involved mandatory arbitration and provisions that were clearly one-sided. The Court does not discuss these decisions here.

[Acknowledgement] into the ARC Agreement and remov[e] … all the unconscionable provisions contained within both agreements." ECF No. 31 at 13. This makes no sense. If the ARC Agreement is an integrated agreement containing a severability provision, then the Court may sever unconscionable provisions leaving a fully enforceable agreement.

Where parties have entered into two contracts covering the same subject matter, the latter contract supersedes the former as to any inconsistent provisions. *See NLRB v. Int'l Union of Operating Eng'rs*, 323 F.2d 545, 548 (9th Cir. 1963) ("[S]ince the contracts were entered into by the same parties and cover the same subject matter, it is a well settled principle of law that the later contract supersedes the former contract as to inconsistent provisions.") (internal citation omitted). *See Michalowski v. Second Judicial Court, ex rel. County of Washoe*, 2015 WL 7341447, at *2 (Nev. 2015) (Table) (Unpub.)[7] (where an agreement may contain an unconscionable provision, severability prevents invalidity of the remainder of the agreement furthering "Nevada's general public policy favoring enforcement of arbitration agreements") (citation omitted).

Here, even assuming, *arguendo*, the disputed provisions relating to confidentiality and fee shifting are substantively unconscionable, "the severability clause preserves the parties' agreement to arbitrate because the disputed provisions are collateral to the [remaining enforceable] clause[s] compelling arbitration." *Station Casinos*, 2014 WL 3747605, at *5. That is, even assuming the fee/cost shifting and confidentiality provisions are impermissible and must be severed, these provisions do not fundamentally change the agreement to arbitrate Plaintiff's claims that are covered by the ARC Agreement. *Ball v. Skillz, Inc.*, Case No. 2:20-cv-00888-JAD-BNW, 2020 WL 6685514, at *4 (D. Nev. Nov. 12, 2020) ("the provision splitting fees is collateral to the clause compelling arbitration"); *Barnett v. V.T. Motors LLC*, Case No. CV-21-01195-PHX-SPL, 2021 WL 5759113, at *4 (D. Ariz. Dec. 3, 2021) ("where the arbitration provision also contain[s] … a severability clause, severing the confidentiality clause and otherwise enforcing the agreement is appropriate and consistent with the FAA and Arizona public policy favoring arbitration.").

Under the circumstances here, the Court finds the severability clause, when employed to eliminate any substantive unconscionability (as discussed below), renders the ARC Agreement the

---

[7] No Pacific Reporter cite is available.

full and final, enforceable agreement of the parties. *Pruter v. Anthem Country Club, Inc.*, Case No. 2:13-cv-1028-GMN-PAL, 2013 WL 5954817, at *4 (D. Nev. Nov. 5, 2013). The Acknowledgment need not be molded into the ARC Agreement requiring rewriting the arbitration agreement as Plaintiff contends. And, in the absence of substantive unconscionability, the Court need not consider procedural unconscionability as both must be present to void the arbitration agreement.

> 5. *The Court Enforces the ARC Agreement, Severing the Confidentiality Provision, but not Severing the Fee/Cost Shifting Provision.*

After considering all of the above, the Court finds severing the confidentiality provision in paragraph 8 of the Arc Agreement (ECF No. 16-2 ¶ 8) is appropriate as the language is such that the potential for substantive disadvantage to Plaintiff should not be risked. In contrast, the Court finds that entering into the ARC Agreement is not a condition of employment. *Id.* ¶ 9 ("**[a]rbitration is not a mandatory condition of Employee's employment**") (emphasis in original). With this finding, supported by well settled law applied to the plain language of the Agreement, and case law interpreting similar fee and cost provisions, the Court finds the fee/cost shifting provision conscionable and, therefore, does not sever this provision. The ARC Agreement is enforceable as stated.

C.  An Award of Fees is Denied.

While the Court has the authority to award attorney's fees under NRS 18.010, the Court finds the considerations identified in subsection 2(b) are not met.

**III.  Order**

IT IS HEREBY ORDERED that Defendants' Motion to Compel Arbitration (ECF No. 16) is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's Motion for Circulation of Notice (ECF No. 10) is DENIED.

Dated this 4th day of March, 2025.

_____
ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE

18